UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HARRY L. SNIDER,

    Plaintiff,

v.                                                            CASE NO.   01-CV-10012
                                                                                                  07-CV-14751

COMMISSIONER OF                                   DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                                   MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]**

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability benefits.

Plaintiff was 47 years of age at the time of the most recent administrative hearing and has completed a high school education. (Transcript, Doc. 22 at 205.) Plaintiff's relevant work history includes ten years' work as a compounder making molded plastic parts. (Tr. at 211.)

Plaintiff filed the instant claim on November 27, 1998, alleging that he became unable to work on September 30, 1997. (Tr. at 46-48.) The claim was denied initially and denied upon reconsideration. (Tr. at 19-25.) In denying Plaintiff's claim, Defendant Commissioner considered residuals of a motor vehicle accident resulting in intermittent episodes of dizziness as a possible basis of disability. (*Id.*)

On May 5, 2000, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Earl Witten, who considered the case *de novo*. In a decision dated June 30, 2000, the ALJ found that Plaintiff was not disabled. (Tr. at 10-17.) Plaintiff requested a review of this decision on August 17, 2000. (Tr. at 7-9.)

The ALJ's decision became a final decision of the Commissioner when, on November 18, 2000 (Tr. at 5-6), the Appeals Council denied Plaintiff's request for review. On February 16, 2001, Plaintiff filed the suit seeking judicial review of the Commissioner's unfavorable decision. (Case No. 01-10012.) On November 19, 2001, I issued a Report and Recommendation suggesting that a motion to remand filed by Plaintiff be denied, and that the Commissioner's findings be affirmed. Upon review, on July 20, 2004, Judge Lawson adopted the Report and Recommendation

in part and ordered the matter remanded to the Commissioner for further proceedings. (Doc. 28.) During this time, Plaintiff also filed an application for Supplemental Security Income Benefits. (Tr. at 363-67.) This claim was also denied at the initial administrative stages. (Tr. at 368-74.)

On remand, the Commissioner consolidated these claims, and Plaintiff appeared with counsel at a hearing before ALJ B. Lloyd Blair on July 12, 2005. In a decision entered on October 28, 2005, ALJ Blair again found Plaintiff not disabled. (Tr. at 241-54). Through counsel, Plaintiff sought review. (Tr. at 237-40). On September 6, 2007, the Appeals Council declined to assume jurisdiction. (Tr. at 234-36.) The instant case followed.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.

2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and

children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984).

While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that on September 29, 1997, Plaintiff was admitted to the emergency room of Mid-Michigan Medical Center after having been involved in a motor vehicle accident. (Tr. at 109.) Plaintiff was unrestrained at the time of the accident and was struck broadside by another vehicle. Plaintiff recounted that he wound up in the passenger side of the vehicle after being struck and was unsure of how he may have hit his head, however, he complained of a swollen area on the right side of the head. Plaintiff did not believe he lost consciousness and recounted no visual or hearing changes. Plaintiff exhibited abrasions to the knees and stated that he hit his knees on the dashboard in the collision. He underwent multiple x-rays and a CT scan, all of which were negative. (*Id*.) Neurological testing of the arms showed that motor and neurovascular function was intact. (Tr. at 111.)

Plaintiff was examined again on October 6, 1997, by Wael J. Salman, M.D. (Tr. at 137.) At that time, Plaintiff was still experiencing some pain and dizziness but felt that the pain was improving. (*Id.*)

In late December 1997, Plaintiff was seen by A. Borders-Robinson, D.O., at the request of Dr. Salman. Plaintiff was complaining of dizziness, a stiff neck, and headaches. (Tr. at 115.) A mental status examination revealed that Plaintiff was alert and oriented, his speech was fluent and coherent, he responded appropriately, and his memory was intact. (Tr. at 117.) Cranial nerves were grossly intact, no visual field deficits were seen, Plaintiff showed full range of motion in the eye muscles, and facial sensation was intact, as were various reflexes. (*Id.*) Sensory examination showed normal response to pin prick, vibration, and tactile sensations. Muscle strength was normal in the legs and arms. Reflex examination, including finger-to-nose and rapid alternating movements, was done appropriately. No ataxia[2] was seen, and orthopedic signs were negative. (*Id.*) The doctor felt that Plaintiff might be suffering from vertigo which could be secondary to inner ear dysfunction. (*Id.*) The doctor suggested that Plaintiff begin low doses of medications and undertake physical therapy and home exercises. (Tr. at 118.)

In late January 1998, Dr. Borders-Robinson reported that Plaintiff continued to complain of neck pain, but "[t]he dizziness has improved. It is not as often, but still occurs spontaneously and lasts only for several seconds." (Tr. at 120.) The doctor encouraged Plaintiff to continue undertaking home exercises. (*Id.*)

In mid-March 1998, Dr. Salman reported that Plaintiff was still having dizziness "even though it is getting shorter in duration and less frequent." (Tr. at 141.) Three days later, a physical

---

[2]Ataxia is defined as the "lack or loss of muscular coordination (the purposeful working together of groups of muscles), resulting in irregularity of muscular movements." 1 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE A-579.

8

therapist reported that he had been seen Plaintiff for a total of nine physical therapy visits and that during that time, the frequency of his dizzy spells had decreased and cervical range of motion had increased. (Tr. at 121.)

In mid-June 1998, Dr. Richard J. Ball, an ophthalmologist, forwarded a report to the Commissioner summarizing the results of vision examinations he conducted on Plaintiff. Plaintiff's eyesight was 20/25 unaided and 20/20 with glasses. (Tr. at 127.) Plaintiff's visual fields were not found to be constricted, and no abnormalities were observed. (Tr. at 128.)

In early September 1998, Dr. Salman returned a form to an insurance company in which he stated that Plaintiff was continuing to suffer from dizziness and that he felt that Plaintiff should refrain from work activities. (Tr. at 133.)

In early September 1998, Plaintiff was also examined at the request of an insurance company by S. A. Colah, M.D. The doctor reported that Plaintiff was alert, cooperative, and well oriented. (Tr. at 191.) Plaintiff was able to recall specific medical events, as well as other matters, from memory. (*Id.*) Movements of the eyes were normal and full, and visual acuity and visual fields appeared normal. No facial weakness or sensory loss in the face was seen, and speech was normal. Range of motion in the neck was normal. No weakness or sensory loss was found in the extremities, and deep tendon reflexes were equal. Plaintiff's coordination was characterized as "good." (*Id.*) The doctor found no drift of either arm when they were outstretched, and no tremors were present. Rapid alternating movements were done appropriately. (*Id.*) Gait was normal, and Plaintiff was able to walk on heels and toes and tandem walk. (*Id.*) Orthopedic tests were normal. (Tr. at 191-92.) Dr. Colah stated that his objective neurological exam was entirely normal. "Even

on repeated examination there is no objective or subjective evidence of nystagmus[3] or vertigo." (Tr. at 192.) X-rays of the skull, taken as part of this examination, were also normal. (Tr. at 195.)

In late September 1998, Dr. Salman completed an insurance questionnaire in which he stated that Plaintiff could stand, climb, balance, stoop, crouch, kneel, crawl, reach, or walk for up to 2.5 hours at a time. (Tr. at 131.) The doctor felt that Plaintiff could sit for more than 5.5 hours at a time. The doctor rated Plaintiff's cardiac condition as "Class 1," which means "No Limitation." (*Id*.)

In early November 1998, Plaintiff underwent a yearly physical examination, at which time he reported to Dr. Salman that he "still gets dizziness and headaches occasionally." (Tr. at 139.) In late November 1998, Plaintiff underwent a hearing examination conducted at Central Michigan University Hearing Clinic. Plaintiff was found to have a moderate high frequency hearing impairment consistent with noise exposure. (Tr. at 135.) Speech understanding was rated as "excellent in quiet." (*Id*.) The specialist performing this examination felt that Plaintiff's prognosis for stable hearing sensitivity would be good if proper hearing protection was utilized. (*Id*.)

In mid-December 1998, Plaintiff underwent an electronystagmography test ("ENG") to assess his propensity for dizziness. The specialist conducting the examination stated that the results of all tests were within normal limits and suggested normal functioning. (Tr. at 151.)

At the first administrative hearing, which was held in May 2000, a vocational expert ("VE") testified. He characterized Plaintiff's prior work as skilled to semi-skilled and up to heavy in exertion. (Tr. at 223.) In response to a hypothetical question, presuming a person of Plaintiff's circumstances, who is able to lift 20 pounds occasionally and up to 10 pounds on a more regular

---

[3]Nystagmus is defined as "an abnormal and involuntary movement of the eyeballs either from side to side or up and down, but usually from side to side. It is a sign of a number of ailments, usually of nervous origin." 4 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE N-170.

basis, who could stand, walk, or sit for at least 6 hours a day, and who could not work in the vicinity of unprotected heights or moving machinery, or undertake work overhead, the VE identified approximately 27,000 janitor, laundry and dry cleaning sorter, and hotel restaurant dishwasher jobs consistent with these hypothetical conditions. (Tr. at 224-25.) The VE stated that approximately 10,000 of these jobs could be done either sitting or standing. (Tr. at 225-26.)

In mid-December 2000, Plaintiff was seen by Dr. Salman. Plaintiff complained of pain in the left shoulder and neck. He stated that prescription medication "helps," but that he still suffered pain. (Tr. at 320.) The doctor found Plaintiff "comfortable and in no distress." Examination of the left shoulder "revealed no swelling or tenderness." (*Id.*) Dr. Salman continued Plaintiff's prescription medications.

In August 2002, Plaintiff underwent a complete physical examination conducted by Dr. Salman. Plaintiff stated that he suffered dizziness associated with headaches "occasionally." (Tr. at 316.) Examination of Plaintiff's head was normal and his neck was described as "supple[.]" (*Id.*) Cranial nerves were found to be intact, and deep tendon reflexes were normal and symmetrical, as was Plaintiff's muscle strength. (Tr. at 317.) Plaintiff exhibited normal gait. (*Id.*) An EKG test showed normal sinus heart rhythm. (*Id.*) A medical report, apparently completed by Dr. Salman also in August 2002, indicated that Plaintiff exhibited no loss of grip strength or dexterity. (Tr. at 318.)

Later in August 2002, Plaintiff underwent a psychological examination conducted at the request of the Disability Determination Service by George Ronan, Ph.D. Plaintiff stated that he spends time with his granddaughter, and often goes to the store. (Tr. at 323.) Plaintiff was found to be in contact with reality and exhibited no unusual motor activity. (*Id.*) Plaintiff's emotional

11

reaction was "described as normal." (Tr. at 324.) Plaintiff was diagnosed with an adjustment disorder with depressed mood. (Tr. at 325.)

At the most recent administrative hearing, another VE testified. She characterized Plaintiff's prior work as unskilled and medium to heavy in exertion. (Tr. at 418.) In response to a hypothetical question presuming a person of Plaintiff's circumstances who could lift up to 20 pounds occasionally, sit or stand for six hours and in an eight hour day, and whose activities did not require the use of ladders or scaffolds, and only occasional use of stairs, and which involved simple unskilled tasks not requiring concentration on detail, precision work or multiple some simultaneous tasks, the VE stated that such individual could not undertake Plaintiff's prior work. (Tr. at 419.) The VE then identified 3,000 hand packaging jobs, 1,000 equipment cleaning jobs, 900 sorting jobs, 3,500 inspector jobs and 10,000 assembly jobs that such a person could undertake. (Tr. at 419-20.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. (Tr. at 253.) At step two, the ALJ found that Plaintiff's dizzy spells, dementia due to head trauma and adjustment disorder with depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 253-54.)

### F. Analysis and Conclusions

### 1.     Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a "significant range" of light work.  (Tr. at 253-54.)  Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner.  As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

After review of this record, and while there is evidence arguably to the contrary  (Tr. at 133, 308-14, 320, 355-62), I suggest that substantial evidence supports the findings of the ALJ.  As to Plaintiff's claims of disabling physical impairments, numerous objective medical tests shortly after Plaintiff's automobile accident were negative (Tr. at 109), as were neurological tests.  (Tr. at 111.)

13

A month after the accident, Plaintiff reported that his level of pain was improving. (Tr. at 137.) Between December 1997 and March 1998, both Drs. Borders-Robinson and Salman, each of whom are treating physicians, reported improvement in Plaintiff's headaches and dizziness. (Tr. at 120, 141.) Similar findings were reported by a physical therapist. (Tr. at 121.) An ophthalmologist reported that, with the exception of the need for glasses, Plaintiff's visual fields were not constricted and no abnormalities were observed. (Tr. at 127-28.) One year after the accident, Dr. Salman, one of Plaintiff's primary treating physicians, answered a questionnaire stating that Plaintiff could stand, climb, stoop, crouch or walk for up to 2.5 hours at a time, and could sit for 5.5 hours at a time. The Doctor gave Plaintiff a cardiac condition indicative of no limitations. (Tr. at 131.) Although Plaintiff was found to have some hearing impairment (Tr. at 135), ENG testing was within normal limits. (Tr. at 151.) In December 2000, Dr. Salman reported Plaintiff to be "comfortable and in no distress." (Tr. at 320.) A physical exam done by the doctor in August 2002 reported normal findings for Plaintiff's head, neck, muscle strength, reflexes, gait and heart. (Tr. at 316-17.) The doctor also reported no loss of strength or dexterity. (Tr. at 318.)

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by Plaintiff's treating physicians. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In support of Plaintiff's claims of disabling mental impairments, Plaintiff's counsel points to the results of testing done at the Delta Clinic (Tr. at 308-14, 355-62), and a GAF score assessed by the Commissioner's consulting psychologist. (Tr. at 325.) As to the former, while they arguably shed light on the etiology of Plaintiff's condition, I suggest they provide little if any real

insight into the level of mental disability suffered by the Plaintiff. As to the GAF score, I suggest that the ALJ correctly concluded that this assessment was sufficiently inconsistent with the recitations of his activities (Tr. at 78-82, 295-97) and his testimony (Tr. at 405-06) as to not be determinative. Rather, I suggest that the evidence in this case falls short of that found sufficient in this circuit to uphold a finding of disability. *See Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991) (claimant experienced "continuing and unrelenting episodes of violent and suicidal behavior, chronic anxiety and abnormal dependency with an inability to handle stress"). I suggest, instead, that the administrative record in this case is much more consistent with those cases in this circuit finding that allegations of disabling mental impairments failed to justify the award of benefits. *See Hogg v. Sullivan*, 987 F.2d 328 (6th Cir. 1992); *Foster v. Bowen*, 853 F.2d 483 (6th Cir. 1988).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                      s/ *Charles E Binder*
                                      CHARLES E. BINDER
Dated: February 5, 2009          United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF system, and served on U.S. District Judge Lawson in the traditional manner.

Date: February 5, 2009        By     s/Patricia T. Morris
                                                   Law Clerk to Magistrate Judge Binder